Good morning, Your Honor. Michael Brodsky on behalf of Nathalie Van and I would like to reserve two minutes for rebuttal if it seems appropriate at that time. All right. So in this case I'd like to address the summary judgment decision first. Magistrate Judge Gruhl in the District Court reviewed the surveillance video of Van's time in a closed-door security room with two Wal-Mart security guards and also reviewed other evidence in the record and concluded from that that no reasonable jury could find that Van was ever confined. Based on that the District Court... Are you really... you're moving to the false imprisonment? Yes. All right. So you want us to argue the false imprisonment's okay? If I may, Your Honor. All right. It's fine with me. So based on that conclusion the District Court granted summary judgment on the false imprisonment claim. But the District Court made several crucial errors in reaching that conclusion. For example, the District Court stated that, quote, the court has found no evidence supporting Van's argument that Leon blocked her exit. Leon, he's referring to security guard Leon. Right. However, Leon admitted that he blocked Van's exit. In his deposition, which was before the District Court, Leon stated, quote, yes, in order for Ms. Van to open the door I would need to move, end quote. Van specifically called that deposition testimony to the District Court's attention in her opposition to summary judgment. Did she ask him to move? Did she ask him to move? Sure. We don't know, Your Honor. There's no sound on the tape. If I'm standing in a doorway, does it mean I'm blocking your entrance? I'm just standing in a very small room, as I recall. You know, the standard on summary judgment is that the District Court is to review all the evidence in the light most favorable to Van. I'm doing that. And I'm saying if I see you standing in a doorway, are you blocking my exit? Yes. Because? Under those circumstances, when she's been brought into a closed-door security. Does the video show her walking toward the door and he's stopping her? The video did not show her physically stopping her, Your Honor. Did he show her trying to walk out the door? It does not show her trying to walk out the door, Your Honor. So if you're standing at the door of the courtroom there, and I'm not trying to walk out, it's a reasonable inference that you're trying to block my entrance, that you're blocking my exit? Under these circumstances, Your Honor, if I'm in a small 5-foot by 10-foot room and there are two security guards standing at the door, and they were both standing at the door, I'm sorry, there's just the one person that's really standing at the door. Well, the one is seated and the other one is standing at the door. Okay. So the guy seated is not standing at the door. Right. Oh, forgive me. I'm sorry. I didn't mean to interrupt. The video shows the one seated really isn't anywhere near the door. He's against a different wall. There's just the one standing on the wall with the door on it. That is correct. But she is a woman in a room with two male security guards. She has been ordered to sign a document that says she's an apprehended subject. Now, I understand, counsel, but just getting back to Judge Fernandez's question, I want to be sure I'm following you correctly. Yes. There's just one guard near the door, and he testified that he would have to move in order for her to leave. Yes, Your Honor. And Judge Fernandez asked you whether or not there was any question, did she ask him to move? And, of course, there isn't any audio on this recording. We can't tell what she said, but did she submit any kind of declaration or other representation that she asked him to move? I don't think you answered that in response to Judge Fernandez's question. No, she did not, Your Honor. Okay. Thank you. Okay. So, again, Your Honor, my point is that under the circumstances with the guard standing in a position where he would have to move for her to get out of the room, and the district judge made an error on that point, where also she was repeatedly told that she would have to sign Walmart's blacklisting notice that stated that she was, quote, a threat to the future security of Walmart, end quote, and forever banned from Walmart property. And that says in bold letters right under her signature, a signature of apprehended subject. And then also she's told repeatedly if she doesn't sign this document, she'll be arrested. And Walmart has never explained how is it that if you're told you must sign this document or you're going to be arrested, that somehow you can just get up and leave. So, no, she didn't charge the door or get up or ask the guard to leave. But under California law, there's certainly enough evidence to get to a jury on a false arrest. And she's not required to actually attempt to get up and leave. There's no case law that says that. The evidence that she was told she would personally be arrested is where? That would be, Your Honor. As opposed to her son? Yes. I hesitate to have you use a lot of time on that. But I think at best, she was told she had to sign the document. At worst, she was threatened with being arrested if she refused to sign the document, as I read that. That is correct. She was threatened that she would be arrested if she didn't sign it. That would be the worst, right? No, what the actual documents in the notes of claims investigator Lisa Johns is where we find this. And it says that she said that must sign document or be arrested. So if she didn't sign it, she would be arrested. And I agree, Your Honor, I shouldn't use my time rifling through the record. But I can submit a citation to that part of the record, very brief after oral argument, if the Court would permit it. All right. I guess I didn't want to undo where my good colleague was going. I just didn't want you to spend a lot of time trying to answer that question if he had further places he wanted to go with this case. Please, Your Honor. I agree. You don't have to spend more time. Okay. And you don't have to submit anything new. Okay. All right. So just to summarize on that point, Your Honor. It seems to me, and I guess I'm anxious for you to think about this, because if I view the evidence and draw inferences the light most favorable to your client, then it seems to me there are several facts Walmart has to account for. First, Van was summoned in the small security office where her son was being detained by two security guards. Then the security guards told her that her son had stolen Legos and she would be held accountable. And then she was given a document that clearly stated she was an apprehended subject. And then, at best, she was told she had to sign the document, but at worst, she was threatened with being arrested if she refused to sign it. Then, either way, the conversation, you can tell from the video that it was intense, and except for a short moment, the guard was either at the door or immediately to one side of the door. Then after she signed the document, the security guards told her she could leave. Isn't that the way it was? Yes, Your Honor. So we've got to determine if those facts, all of them, not breaking them down to one or two, but the whole of what happened, whether that can survive summary judgment. Yes, Your Honor. The totality of the circumstance. I mean, the test is whether a reasonable person would feel confined, and we have to take the whole circumstances, including the fact that it's a very cramped, disheveled security room. And I would also point out that at the end of the tape, she resists signing it. The tape shows she takes it on her lap. She looks at it. The guard is gesturing at her and speaking to her. She puts the document back on the table. The guard continues standing at the door, gesturing at her. And then finally, the guard makes these karate chopping motions like this right at her. And it's only immediately after the guard does that that she signs it. So I'm not saying that, you know, the jury has to hold Walmart liable, but there's enough there to get to a jury and let the conscience of the community make that decision. Which brings me to the next point, that the viewing of that tape, you know, the seeing the guard going like this at her, the whole circumstances in the room, a woman with her small son and two security guards. Would a reasonable person feel confined under those circumstances, and therefore, we can infer intent? That's something that's for a jury. That's the heart of our jury system. And I cited a number of cases in my briefs that say that kind of thing is just not appropriate for summary judgment. At a trial, that tape could be put up on a screen, you know, proper viewing, and Van could be questioned and narrate what was happening here, what was happening there. And, you know, it's just not appropriate to make that determination on summary judgment or on an appellate record. Let it go to the jury. I think we have your argument there. Did you have other issues you wanted to talk about? Yes, Your Honor. I wanted to go then to the 12B6 motion, where the district court dismissed all of Van's civil rights claims and only allowed the claim on defamation and false arrest to go forward. This was the first time that sufficiency of Van's pleadings had been challenged, and she was given no right to amend. The motion was granted without leave to amend. And the case law of this Court, I think, is as strong on this point as it is on any. You know, a pro se litigant bringing a civil rights claim must be given a right to amend. And there's no question about that. I guess we have to look at the facts, because you'll agree with me, she didn't refer to Section 1981. She didn't refer to California's Unruh Act. So what we're really doing, because she doesn't refer to anything, is we're reviewing what she said and suggest asking, does it get her there? Well, Your Honor, if those claims – I argued that there was enough in the original complaint and it should have never been dismissed. But let's assume that – Counsel, could I interrupt you? Forgive me. But the original complaint was drafted by a lawyer, right? The first complaint, yes. Right. And it included the citations, right? I think it did. And then the one she filed didn't – and I understood her to say she didn't have a section sign. I had to interpret the deposition testimony, but she said she didn't have a little squiggly mark. I think she means she didn't have a section sign on her typewriter. That is correct. Basically. She does say that. Okay. And so getting back to Judge Smith's question, I just want to catch up to where you two are. Right. Because that's – that is an amended complaint when you said it's her first shot. She had – that is an amended complaint and she filed it in a pro se status, right? Yes, Your Honor. Okay. Apart from taking out the citations, as Judge Smith was just alluding to, did she change the words used to describe those claims? Yes, she did, Your Honor. Okay. She reorganized and cut and pasted. And the original complaint had labels like negligence, false arrest, et cetera. And she took those out. Well, so that's – that's what I'm trying to get at. Because it's – that makes it a little harder, as Judge Smith is indicating, about what, you know, what really can be divined from the complaint. Right. I understand the squiggle mark. I mean, I understand that she didn't have that font on her type – whatever word processor she was using. But what about the other changes that she made? Well, the other changes, Your Honor, if they couldn't be divined from the complaint as it was filed, and let's say it was appropriate for Judge Gruhl to grant the motion to dismiss, she still had a right to amend. In other words, dismiss with leave to amend and make a more definite statement. Well, unless it would be futile. Well, unless it would be futile. But it wouldn't be futile, because she could have cited the UNRRA Act. She could have cited Section 1981. She could have alleged facts to show state action under Section 1983. And the – even if the grant of summary judgment was correct on the false imprisonment claim, that would not render that harmless error, because, for instance, the UNRRA Act requires no violence or threat or confinement. Any type of disparate treatment based on race in a retail setting is actionable under the UNRRA Act. Likewise, denial of services is actionable under Section 1981. So even if I'm wrong that she didn't adequately state those in the complaint as and the law in this circuit is just so strong on that that you must give her at least one chance. Now, maybe if she had that one chance and she wouldn't have gotten a hold of a law librarian or somebody to help her, she might not have made it. But she had the right to try. And I'd also like to point out, I think it's relevant that her attorney suddenly withdrew from the case at a crucial moment. And she was left unrepresented. And she couldn't get another attorney. And she was doing the best she could. I'll leave. Can I have my 30 seconds for rebuttal? Good morning. May it please the Court. Jessica Plyner on behalf of Walmart Stores. The first thing I did briefly want to address was the motion to strike. And it's already come up today with respect to whether there was evidence before the saying, you must sign the document. And I filed a motion to strike in the appellate court, which details that after Ms. Vann filed her timely opposition and 100-page declaration in opposition to summary judgment and Walmart filed its timely reply, on the day of the actual hearing, which was 28 days after the deadline for the opposition, Ms. Vann brought to the hearing a new declaration with another 90, you know, 80-some-odd pages. And Magistrate Grewal indicated that while she could go downstairs and file it, he wasn't indicating that he would consider it because it wasn't timely. Did he? I actually believe he did not consider it because there's a reference in his order on summary judgment referencing deposition testimony that was not attached to the declaration. And the supplemental declaration filed by appellant had this testimony. But the point that I wanted to make was... Well, my worry was that I thought he did consider stuff that you might not think he considered. But that's why I ask you the question. Well, I thought it was evident that he didn't because he specifically referenced in his order a piece of deposition testimony not being attached, which was not attached to the original 125 timely filed. Well, I'm sorry. Then what was the point? My point... As I interrupted you when you said, my point is... My point was simply that Walmart filed a motion to strike down below, either seeking that the declaration be stricken or have the opportunity to respond and assert evidentiary objections, which is especially important on an evidentiary motion also involving a pro se litigant. And because Ms. Vann withdrew her declaration, filed a notice of withdrawal, Walmart withdrew its pending motion to strike in reliance on that. So it is covered in my motion and it's mentioned in the brief. Counsel, you said it had already come up today. I guess what I'm trying to find out, I was trying to ask counsel about it. Are you saying that the statements about they said they would arrest me and such only appears in that particular declaration? It does not appear elsewhere? That's absolutely correct. That's what I was trying to find out when we decided to go off a different direction. All right. So your position is that if we strike that, then that information wasn't considered by the district court and shouldn't be considered by us. That's your point? Absolutely. And Walmart was deprived of an opportunity to respond to it. Thank you. What's the best indication that the court did not consider it? That's the trouble I'm having. How can we tell? Is it just the inference that there was a reference to a document that was not attached? Specifically in the order, the district court mentions that, you know, Vann references in the opposition X, but the deposition testimony was not attached to our declaration. That's, and I can tell you the specific. If that's the one you're referring to, I've got that one. So no need to take your time on that. Thank you. Sure. I guess my worry is here. I mean, I remember as a district court judge when I had pro se people in front of me and I know that I had this rule that said, if you're going to be a pro se person, you're going to be subject to the same things that lawyers are subject to. But then I read every case that I can about that and it isn't the truth. They're not subject to that. In fact, I'm supposed to give them much more deference. And here the magistrate court denied any leave to amend at all. And what that says to me is I'm to look in there and say, if that pro se plaintiff had a chance to amend, is there nothing one could do to amend? And that's the worry that I have for Walmart. Okay. And I would echo that I agree that that's probably counsel's strongest point, is the leave to amend. I'm not going to address the adequacy of what was pled further than I have in the brief, because I think that's covered. In the Ninth Circuit cases that are, for the most part, I think it's quoting Foman v. Davis, the Supreme Court case. But the analysis for the factors about leave to amend include undue delay, bad faith, which I don't think is an issue in this case, and Walmart's never asserted that, a repeated failure to cure the deficiencies, an undue prejudice, and futility. With undue delay, I do want to point out that this was not a 12B6 at the beginning of the case. This was two years in. Ms. Vann had filed a motion to amend her complaint, even though it wasn't necessary just to remove her son's claims, because the district court did that by order, which Walmart opposed. Based on an argument of prejudice, the district court permitted Ms. Vann to file this second amended complaint, which she did. So it's not that she never had a stab at amending it. It is correct that it had not been challenged. I'm not suggesting this is her fourth bite of the apple or anything like that. But there had already been undue delay. Walmart had already made clear to the court, we've conducted discovery for two years. We're ready to move forward with despotism motions. I believe the court took that into consideration in deciding that it was okay to leave the false imprisonment and defamation claims for Ms. Vann to proceed on. The court did say in its order, well, fact discovery is not closed to the extent Walmart seeks permission to depose Ms. Vann again just on these two new claims. Walmart has permission. The difference between proceeding on the defamation and the false imprisonment, as opposed to waiting and trying to reallege all these civil rights claims, sorry, my throat is dry, is that- If we could get you some water, that would help you. You wouldn't mind? I'm so sorry. Okay. The difference is that with respect to civil rights claims and ascertaining any facts that were going to support those claims, Appellant had already had two years to do that. Well, but didn't she, in her reply brief, suggest she could amend her complaint to expressly allege that Walmart had an agreement or that there was a custom and practice that the local police would arrest anyone turned over to them by Walmart without question? I did read that in the reply brief, and there's a couple problems with that. One is that it's undercut by the other evidence in this case, that the police were never called. She nor her son were never- Well, but then she asserts that, further, if I read it, she could support the allegation by alleging the guards handed her a copy of the penal code, the guards said they could have her son arrested, the guards told Vann's son that they were police officers, Walmart was engaged in the joint participation activities with regard to the photos, Walmart's internal manual implies an agreement between Walmart and the police. I mean, given the state of the law, and I read that just to say, because usually I'd say to counsel, because I was a DJ, what would you say? You say you can amend, what would you say? So I read what they might say. Well, given that, all of that, it seems that I can't say it's absolutely clear that these deficiencies can't be cured by amendment. Well, I mean, counsel was very creative with suggestions of theories he could plead and facts that might support it. Well, that would be exactly my questions if he were up here saying, I could have amended, but they didn't give me a chance. I just said, well, what are you going to say? Seems like counsel thought a little bit ahead, and he said, that's probably the question you're going to ask. And so then I read what he would say, and I said, well, I guess probably should have had a chance to amend on that, especially with a pro se. Right. But I think it would be futile in the sense that there's already evidence in the case, both in the record before the Court and evidence that's not, that I won't go into, but that there was no relationship with the police, and in this case, they were never even called. But, counsel, really, that misses the point, right? The point is she says, she alleges, who knows, but she alleges that she was threatened with those things. That the police would be called. Right. Or that you were in a joint agreement with them, that whenever you do this, they're absolutely going to help you out. We don't know if that's true. We don't know if it's true. It's just to the point of that was, viewing it in 20-20 hindsight doesn't help us, because her allegations, and I want to give you a chance to respond to this, because this is where I'm going to be coming from when we conference the case. The allegations were that this is what she thought at the time, and that she didn't make it up out of whole cloth. She had these reasons to have that impression. So what is Walmart's response to that? Well, I don't think it's plausible in light of all of the other evidence. I mean, the Asset Protection Associate's testimony, along with Ms. Vann's testimony that was in the original declaration, establishes that she wasn't yelled at or threatened or harassed or that the Asset Protection Associate went and got her tissues because she was upset. There's testimony before this Court in the record that the reason that she stated to the Asset Protection Associate that why she was so upset is because she was embarrassed over the whole situation because her son is a good boy. But this is not the time for the district judge or the court who's making the determination in this particular situation to view facts and weigh. This is a time when one's to decide whether one can amend to make it what they need to make it, not that it's right or it's wrong, not that it disagrees or it doesn't agree. That's the problem that I have with that argument. So then I looked at Fife. Fife is not this case. And so I thought, well, I can't go with Fife. So I'm stuck. I can't help in this situation, though I don't like amendments at the last minute, and I especially don't like pro se plaintiffs necessarily getting extra help in every time with the situation. But I'm stuck with the law. So I'm saying, help me. This seems to make it. I can't weigh the evidence. I can't decide whether she's right or wrong. All I can do is find a case that says, no, that won't work. I can't find that case. I agree. Amendment is liberally given, and I wish there had been stated reasons in the order. It would make everyone's job easier. But she has already taken a position with testimony in the case that's before the court that says she's returned to the store numerous times with her son. There's no basis for an unrefusing services from a business establishment. 1981 claim. These claims won't survive. They would be futile in light of the position she's already taken in the case. In light of evidence, what you're saying. Correct. And what are you going to do about the court's failure to acknowledge the tort claims? Are you talking about negligence, security? Yeah. I mean, I dealt with them in the brief that essentially Ms. Vann was on notice for summary judgment that the whole complaint would be dismissed of. Quite frankly, she didn't. I'm out of time. Well, you can answer my question. Okay. It seems to me to be a little out of it to suggest that what she's going to do is present evidence on tort claims she may have when the court is talking about false imprisonment and defamation. The tort claims about negligent, infectional affliction of emotional distress, et cetera. It doesn't seem to me. One's going to put forth evidence about those potential claims, which can be amended when one's talking about false imprisonment and defamation. If you look at Ms. Vann's opposition to the summary judgment, opposition to the motion for attorney's fees, she is, to the very end of the case, still making the same arguments about civil rights claims and so forth. I believe she believed she had all of those claims the whole time, so I don't think it would have made a difference. All right. Thank you. Great. I don't mean to cut you off, but I think we know your arguments. Okay. Counselor. Yes, I'd like to go back to Judge Fernandez's question. Yes, the evidence that she was threatened that she would be arrested was in the record and was never challenged. It says, now you will need to sign these saying responsible for toys or we'll call the police and arrest you. Said sign now or we'll call the police to arrest you. That's in Exhibit A. It's claims investigator Lisa John's notes. Exhibit A to Vann's original timely file declaration. It's at ER 54, and the district court specifically stated that it had considered that. The district court stated, quote, it had carefully reviewed Exhibit A, and that is at ER 27 where the district court says that. On the putting on evidence about the dismissed claims at summary judgment, those  They weren't before the court. So she had no way to put forward any evidence at summary judgment on false imprisonment about anything on negligence or intentional infliction of emotional distress. Those claims had been dismissed. They weren't before the court. She couldn't argue them. Thank you. Thank you, Your Honor. Appreciate both of your arguments, and I'm sad your voice wasn't quite up to par. And case 11-17040 and 12-15284 are submitted.
judges: Fernandez, Smith, Christen